UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LEVI CHALLENGER, | : | |
| | : | Civil No. 18-15240 (KM) (MAH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GISELLA BASSOLINO, et al., | : | |
| | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

This action arises from the February 15, 2017, arrest of plaintiff Levi Challenger in Jersey City, New Jersey.  DE 25 (amended complaint) at 3. Challenger sues Deputy United States Marshal William Uhler; Hudson County Sheriff's Office Detective Sean Caldwell, who was a United States Marshals Service ("USMS") Task Force Officer ("TFO") at the relevant time; and United States Probation Officer ("USPO") Gisella Bassolino. Challenger alleges that these Uhler and Caldwell used unconstitutional excessive force while effectuating his arrest. *Id.* at 3–4. Challenger also alleges that, following the arrest, Bassolino showed deliberate indifference to his serious medical needs by denying him medical care. *Id.*

Uhler, Caldwell, and Bassolino have moved for summary judgment, arguing that (1) Challenger has no claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because (a) his excessive force and deliberate indifference claims present new contexts and (b) special factors counsel against creating a money damages remedy; and (2) even if Challenger has alleged a viable *Bivens* claim against Bassolino, she is entitled to qualified immunity. DE 196-1 at 10–11. For the reasons below, I find that

Challenger's claims are not cognizable under *Bivens*, ork alternatively, under 42 U.S.C. § 1983, and thus defendants' motion will be granted.

## I.     BACKGROUND

### A.  Facts

The relevant facts, viewed in the light most favorable to Challenger, are as follows.

In 2013, Challenger was convicted of a federal weapons charge and sentenced to 70 months in prison. DE 196-4 at 33. Following his release from prison in June 2016, he was placed on federal supervised release under the supervision of USPO Bassolino. *Id.* at 34–35, 164; DE 196-6 at 1.

On December 5, 2016, a New York City Police Detective, Nicholas Isolano,[1] informed USPO Bassolino that Challenger was a suspect in a robbery in Manhattan, portions of which were captured on video. DE 196-6 at 4–5; DE 196-4 at 165. Bassolino subsequently reviewed the video and advised Isolano that she recognized Challenger. DE 196-6 at 1–2; DE 196-4 at 248, 250. On February 12, 2017, Isolano informed Bassolino that he had obtained a warrant for Challenger's arrest for the Manhattan robbery. DE 196-6 at 2; DE 196-4 at 165, 167, 197. The following day, Bassolino spoke with Uhler, who was coordinating Challenger's arrest with the New York City Police Department. DE 196-6 at 2; DE 196-4 at 165, 172. Bassolino advised Uhler that she was scheduled to visit Challenger's home in Jersey City on February 15, 2017, and that she expected Challenger to be home that day. DE 196-6 at 2; DE 196-4 at 165.

On February 15, 2017, at approximately 9:45 a.m., Bassolino, Uhler, Caldwell, Isolano, and others went to Challenger's residence to arrest him. DE 196-6 at 2; 196-4 at 46–47, 62–63. While outside the building, Bassolino notified Challenger that she had arrived and that he should

---

[1] Isolano was previously a defendant in this action, but has since been dismissed. DE 113 & 114.

come to the door to let her in. DE 196-6 at 2; DE 196-4 at 29–40, 162–63. Challenger opened the

front door of his building, and Uhler and others entered the vestibule to arrest him. DE 196-6 at

2; DE 196-4 at 46–47, 77, 162–63, 205. Bassolino remained on the sidewalk. DE 196-6 at 2; DE

196-4 at 77, 178, 205.

After Uhler entered the vestibule, he required Challenger to face a wall and then placed

him in handcuffs. DE 196-4 at 60–65. Challenger alleges that after he was handcuffed, Uhler

punched him in the face, Caldwell lifted him up and slammed him to the ground, and both Uhler

and Isolano punched him in the face as he lay on the ground. *Id.* at 65–69. Challenger was then

picked up and taken out of the building. *Id.* at 76. He suffered cuts and scrapes to his face and

knees, broken teeth, and aggravation of his preexisting hearing loss. *Id.* at 78–81. Bassolino saw

Challenger leave the building in the custody of Uhler and others. DE 196-6 at 3; DE 196-4 at 50,

256–57. As he was walking out of the vestibule, Challenger said to Bassolino, "[Y]o, look at my

face. Like you ain't going to call an ambulance?" DE 196-4 at 50. She responded, "[Y]eah,

right." *Id.*

Caldwell and another officer with the Hudson County Sheriff's Office, William Velez,

took Challenger to the Hudson County Sheriff's Office for processing and then to the Hudson

County Jail. *Id.* at 82–83, 84–85. When brought to the jail for intake, a corrections official

advised Caldwell and Velez that Challenger needed to be medically cleared before the jail would

admit him. *Id.* at 85. Caldwell and Velez then took Challenger to the Jersey City Medical Center

("JCMC"). *Id.* at 86–87. During the car ride to JCMC, Challenger was told by Velez to "say the

right thing or else," which he took to mean, "say the right thing or they going to kick my ass." *Id.*

at 80.

Challenger arrived at JCMC at approximately 4:00 p.m. *Id.* at 88; DE 197 at 13. While at the medical center, Challenger received a physical exam, CT scan, and one 800 mg dose of ibuprofen, and was diagnosed with a facial contusion and abrasion, and two chipped teeth. DE 197 at 16–26; DE 196-4 at 91–92. At approximately 5:45 p.m., he was medically cleared for incarceration and discharged. DE 196-4 at 93. Caldwell and Velez then brought Challenger back to the jail. *Id.*

### B. Procedural History

Challenger initiated this action in October 2018 against Uhler, Caldwell, Bassolino and other defendants. DE 1. Upon screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, I permitted Challenger's excessive force claim to proceed against Uhler, Caldwell, and Isolano, and his deliberate indifference claim to proceed against Bassolino. DE 6 (opinion), 7 (order). I construed the claim against Caldwell, who is employed as a county detective,[2] as being brought under 42 U.S.C. § 1983 (DE 6 at 4–5), and the claims against Uhler and Bassolino, both federal employees, as being brought under *Bivens* (*id.* at 5–9). In June 2019, Challenger filed an amended complaint that was not materially different from his initial complaint. DE 25. The defendants answered that complaint in July and August 2019 (DE 26 (Bassolino), 27 (Uhler), 30 (Caldwell)); and the parties completed discovery in August 2022 (DE 177 at 6).

The defendants moved for summary judgment in October 2022. DE 196. They assert that Caldwell, as a specially deputized TFO of the USMS's New York/New Jersey Regional Fugitive Task Force ("NY/NJ RFTF") during the relevant time, was a federal actor, and thus they analyze the excessive force claim against him under *Bivens*. They further argue that (1) the Court should

---

[2] The complaint did not allege that Caldwell was serving as a Special Deputy U.S. Marshal during the relevant time.

not extend *Bivens* to the claims against them because the claims present new contexts and special factors counsel against creating a money damages remedy, and (2) even if *Bivens* extends to the claim against Bassolino, she is entitled to qualified immunity. DE 196-1 at 9–23, 29–38.

Challenger, representing himself, opposed the motion in January 2023. DE 214-1. He does not dispute that his claims would require the Court to extend *Bivens* to a new context. Rather, he argues that *Bivens* does not apply at all, because the defendants were executing a state, rather than federal, arrest warrant, and were thus "acting under the color of state, rather [than] at the behest of the federal government at the relevant time"; thus, "all claims should proceed against defendants under § 1983, dissipating the need to extend a new *Bivens* context." DE 214-1 at 2–3. Challenger also asserts in his accompanying declaration that he has "brought forth a [42] U.S.C. § 1983 civil action against [Bassolino, Uhler, and Caldwell]." DE 214-4 at 1. He does not state that he asserts claims against these defendants pursuant to *Bivens*.

Defendants replied in February 2023, arguing that *Bivens* applies because (1) Bassolino and Uhler are federal employees, and Challenger's bald assertion that they were part of a state law enforcement unit cannot be credited on summary judgment; and (2) Caldwell, though technically a county employee, had been deputized as a Special Deputy U.S. Marshal at the time of the incident, and the Third Circuit has held that *Bivens* applies to state law enforcement officers acting as Special Deputy U.S. Marshals assigned to a federal task force. DE 217 at 9–16.

The motion is therefore fully submitted and ready for decision.

## II.   DISCUSSION

### A.  Summary Judgment Standard

A court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a), (c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome. *Id.* The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, 477 U.S. at 323. "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).

"At the summary judgment stage of proceedings, courts do not weigh the evidence or make credibility determinations, but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quotations and citation omitted). The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Summary judgment should be granted if the Court finds, in consideration of all the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**B.  § 1983 Claims**

**1.  Applicable Law**

Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States," and "that the alleged deprivation was committed or caused by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2. Analysis

The primary issue here is whether the defendants—two federal employees and one state employee who (it is not disputed) had been deputized as a member of a federal task force, and who all three (it is also not disputed) were executing a state warrant—were acting under color of state law or federal law when they arrested Challenger. If, as Challenger asserts, they were acting under color of state law because they were executing an arrest warrant issued by a state court, then Challenger's claims must be analyzed under Section 1983. If, though, they were acting under color of federal law because they were fulfilling their law enforcement duties either as federal employees or as members of a federal task force, their claims must be analyzed under *Bivens*. There was a time when this distinction was less important, because Section 1983 and *Bivens* embodied overlapping legal standards.[3] But recent Supreme Court case law has restricted *Bivens* and made clear that extending it to new contexts—that is, beyond the narrow circumstances in which the Supreme Court has already recognized a *Bivens* remedy—is

---

[3] *See, e.g.*, *Parness v. Christie*, No. CIV.A. 15-3505 JLL, 2015 WL 4997430, at *10 (D.N.J. Aug. 19, 2015) (noting that the "confines of a *Bivens* claim and a similar claim brought pursuant to § 1983 are usually coterminous," thus "the same legal principles apply to both claims and the legal analysis is virtually identical").

"disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Thus the *Bivens*/§

1983 distinction is now more often outcome-determinative.

The Court finds that the defendants were acting under color of federal law. To begin

with, it is not disputed that USPO Bassolino and Deputy U.S. Marshal Uhler were federal

employees during the relevant time, and that Detective Caldwell had been properly deputized as

a Special Deputy U.S. Marshal. *See* DE 196-5 at 3 (Exhibit 1 to declaration of USMS General

Counsel Lisa M. Dickenson: Special Deputation Oath of Office, Authorization and Appointment

form reflecting that from November 16, 2016, to November 30, 2018, Caldwell was a specially

deputized TFO of the USMS's NY/NJ RFTF, and his appointment authorized him to "seek and

execute arrest and search warrants supporting a federal [task force] under Title 18 authority.")

(capitalization omitted); DE 196-6 at 1 (Bassolino declaration stating that she worked for the

U.S. Probation Office as a supervision officer from 2009 to 2019).

Second, there is no dispute that the defendants undertook their efforts to locate and

apprehend Challenger as part of their duties as federal task force members. *See* DE 217-2

(Exhibit 1 to declaration of Hope Lu, counsel for defendants: USMS Use of Force report, dated

Feb. 15, 2017, asserting that "[o]n 2/15/20217 . . . DUSM Uhler, TFO Caldwell, PO Bassolino . .

. and other members of the NY/NJ RFTF went to . . . arrest Challenger [who] had a warrant out

of NY for robbery and assault").[4]

---

[4] The USMS is authorized to "investigate . . . fugitive matters, both within and outside of the United
States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B). "The U.S. Marshals Fugitive Task
Force consists of federal, state, and local law enforcement authorities that adopt state court warrants,
which allows state and local officers to execute those warrants outside of their jurisdictions." *United
States v. Smith*, 743 F. App'x 943, 945 (11th Cir. 2018) (citing 34 U.S.C. § 41503(a) ("The Attorney
General shall . . . establish permanent Fugitive Apprehension Task Forces consisting of Federal, State,
and local law enforcement authorities . . . , to be directed and coordinated by the United States Marshals
Service, for the purpose of locating and apprehending fugitives.").

Third, as pertinent to Caldwell in particular, numerous courts, including the Third Circuit, have recognized that state officers are considered federal actors when carrying out their duties as part of a federal task force. *See, e.g.*, *Lawson v. McNamara*, 438 F. App'x 113, 115 n.1 (3rd Cir. 2011) (holding, in case in which defendant Philadelphia police detective was member of USMS task force, that "the District Court properly construed the action as brought under [*Bivens*]"); *Ramirez v. City of Trenton*, No. 21-10283, 2022 WL 1284737, at *2–3 (D.N.J. Apr. 29, 2022) (explaining that "the District of New Jersey has classified deputized U.S. Marshals employed by state agencies as federal actors," and that "[t]he Court has not identified a single case permitting both section 1983 and *Bivens* claims against the same defendants acting as part of a federal task force operation during an isolated incident.") (citations omitted); *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 513 n.2, 537 (D.N.J. 2013) (holding that the defendants, "although they each worked for state and local law enforcement agencies," were "to be considered federal agents acting under federal law during the incident in question" because they were federal task force members), *aff'd sub nom. Est. of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239 (3d Cir. 2016).[5] Here, as Caldwell had been designated a Special Deputy U.S.

---

[5] *See also Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) (local officers "assigned to an FBI Joint Organized Crime and Drug Enforcement Task Force" were "federally deputized for their Task Force work"; thus the claim was "properly brought" as a *Bivens* action); *Majors v. City of Clarksville*, 113 F. App'x 659, 659–60 (6th Cir. 2004) (construing § 1983 claim against "police officers who were acting as deputized Task Force Agents by the [DEA]" as a *Bivens* claim); *Texas v. Kleinert*, 143 F. Supp. 3d 551, 562 (W.D. Tex. 2015) ("Courts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents."); *Pike v. United States*, 868 F. Supp. 2d 667, 670, 677–678 (M.D. Tenn. 2012) (§ 1983 claims against "state and local law enforcement officers who served as members of the Fugitive Task Force . . . [of] a program coordinated by the [USMS]" were "plainly *Bivens* claims, not § 1983 claims"); *Ivey v. Lyman*, No. 902CV470, 2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005) ("[D]efendant is employed by the Albany Police Department, and thus would generally be acting under color of state law in his capacity as a police officer. However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent.").

Marshal and was executing a warrant as part of a NY/NJ RFTF operation, I find that he was a federal actor during the time in question.

Challenger's argument that defendants were acting under color of state law because they were executing a state warrant is creative, and not illogical, but this precedent dictates that it must fail. In many of the cases cited above (and others), the defendants were executing state arrest warrants but nonetheless found to be acting under color of federal law. *See, e.g.*, *Martin*, 965 F. Supp. 2d at 513 (analyzing claims under *Bivens* where task force members were executing three warrants issued by Virginia state courts); *Lawson*, 438 F. App'x at 114, 115 n.1 (analyzing claims under *Bivens* where defendants were executing a warrant for Lawson's "arrest for attempted murder and other state offenses"); *United States v. Smith*, 743 F. App'x 943, 948 (11th Cir. 2018) (per curiam) ("Smith argues that the evidence was insufficient to show that Hovland was a federal officer because when he apprehended Smith [pursuant to a state warrant] he was acting in his capacity as a local sheriff, not as a member of the U.S. Marshals Service. Again, we disagree. . . . [T]he U.S. Marshals Fugitive Task Force consists of local officers . . . who are authorized by the federal government to pursue fugitives who have committed serious crimes. The Task Force adopts warrants—including state warrants—and deputizes local officers to execute those warrants."); *Deavers v. Martin*, No. 21-423, 2022 WL 4348474, at *5 (S.D.W. Va. Sept. 19, 2022) ("[5 U.S.C.] § 3374(c)(2) [governing assignments of employees from state or local governments] expressly provides that a local government employee who is assigned to a federal agency, like the United States Marshals Service, 'is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute.' Numerous courts that have examined this issue have reasoned that members of these federal fugitive task forces do not lose the scope of their federal employment while they are executing

state arrest warrants.") (citing cases); *see also id.* at *6 ("Despite Plaintiff's attempts to tie Martin to the state, the nature and character of the joint Cuffed Task Force is federal, authorized by federal statute and administered by a federal law enforcement agency. As such, Martin was a federal actor on the occasion in question. Because he was a federal actor, Plaintiff cannot maintain a § 1983 claim against him.").

In short, viewing the evidence in the light most favorable to Challenger, there is no sustainable factual dispute that the defendants were federal actors, acting within the scope of their federal task force responsibilities, when they were attempting to effectuate Challenger's arrest, notwithstanding that they were executing a state, rather than federal, warrant. Accordingly, Challenger's excessive force and deliberate indifference claims must be analyzed under the *Bivens* framework. To the extent Challenger maintains that his excessive force claims against Uhler and Caldwell and his deliberate indifference claim against Bassolino arise under § 1983, summary judgment will be granted in favor of defendants on each of those claims because the defendants were not acting under the color of state law.

### C. *Bivens* Claims

#### 1. Applicable Law

"[I]n the 100 years leading up to *Bivens,* Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). "In *Bivens*, the Court held that it had authority to create a cause of action under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (quotations omitted). "Over the following decade, the Court twice again fashioned new causes of action under the Constitution—

first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Egbert*, 142 S. Ct. at 1802.

In the decades after *Carlson*, the Supreme Court has not implied an additional cause of action under the Constitution. *See Egbert*, 142 S. Ct. at 1797 (the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations") (citations omitted). "Rather than dispense with *Bivens*," however, the Court "emphasize[d] that recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Id.* at 1797 (quoting *Ziglar*, 137 S. Ct. at 1856–57); *see also Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020). Indeed, if the Court "were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809; *see also Tate v. Harmon*, 54 F.4th 839, 843–44 (4th Cir. 2022) ("[I]n the 42 years following *Carlson*, . . . the Court has 'consistently rebuffed' every request . . . to find implied causes of action against federal officials for money damages under the Constitution. And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them.") (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

After *Ziglar* and *Egbert*, the analysis of a proposed *Bivens* proceeds in two steps: First, I must determine whether the claims present a new *Bivens* context. Second, I must determine whether "special factors" "indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803 (cleaned up). These two steps "often resolve to a single question: whether there is

any reason to think that Congress might be better equipped [than the judiciary] to create a damages remedy." *Id.* at 1803; *see also id.* at 1809 ("a plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law") (quotations omitted).

### 2.  Excessive Force Claims against Uhler and Caldwell

For the reasons below, I find that Challenger's excessive force claims against Uhler and Caldwell present a new context, and that "special factors" counsel against expanding the *Bivens* remedy.

#### a.  New Context

A putative *Bivens* action presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. 1843, 1859; *see also Mack*, 968 F.3d at 319. A case might be considered "different" from previous Supreme Court *Bivens* cases on any number of bases, including the following:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859–60. The Supreme Court's "understanding of a 'new context' is broad," *Hernandez*, 140 S. Ct. at 743, and "[e]ven a modest extension" of *Bivens* "is still an extension." *Ziglar*, 137 S. Ct. at 1864.

Applying those principles here, I find that this case involves facts that are materially different from *Bivens*, *Davis*, and *Carlson* and, thus, presents a new *Bivens* context. Challenger alleges that Uhler and Caldwell used excessive force while arresting him, and therefore any

*Bivens* claim against them would arise under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest . . . it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person.").

The claims in *Carlson* arose under the Eighth Amendment, 446 U.S. at 16, and those in *Davis* under the Fifth Amendment, 442 U.S. at 236. Neither recognized a cause of action for money damages under the Fourth Amendment. It follows that neither of these cases arose in the same context as Challenger's Fourth Amendment claims.

The most promising precedent is *Bivens* itself, which of course did arise under the Fourth Amendment. 403 U.S. at 389. That commonality, even if necessary, is not sufficient; "a common constitutional basis is simply not enough to link a new *Bivens* theory to an existing *Bivens* context." *Landis v. Moyer*, No. 19-470, 2022 WL 2677472, at *6 (M.D. Pa. July 11, 2022); *see also Hernandez*, 140 S. Ct. at 743 (courts must "look beyond the constitutional provisions invoked"); *Egbert*, 142 S. Ct. at 1805 (declining to extend *Bivens* to a Fourth Amendment claim for excessive force by border patrol agent; even "almost parallel circumstances . . . are not enough"); *Landis*, 2022 WL 2677472, at *5 ("superficial similarities are insufficient to justify creating a *Bivens* remedy") (quotations omitted).

In *Bivens*, the plaintiff alleged that agents of the Federal Bureau of Narcotics, *without a warrant*, entered his apartment, "manacled [him] in front of his wife and children, and threatened to arrest the entire family," "searched the apartment from stem to stern," and, without probable cause, arrested him. 403 U.S. at 389. Here, by contrast, there is no dispute that (a) Challenger was on supervised release at the time of his arrest and thus had a diminished expectation of

privacy, (b) the defendants possessed a valid warrant for Challenger's arrest, and (c) Challenger was arrested in the vestibule of his apartment building, not in his apartment. Further, there is nothing in the record indicating that Challenger's apartment was searched at all, let alone that it was searched, without a warrant, from "stem to stern." More generally, the heart of the claim in *Bivens* was the intrusion, handcuffing of the family, and arrest of Bivens (who was thereafter strip searched in connection with processing at the police station), in the absence of a warrant or probable cause. Here, by contrast, the heart of Challenger's claim is that the officers used excessive force and physically injured him in the course of executing a valid arrest warrant.

In short, while there is some general overlap between the facts of this case and *Bivens,* there are more than enough differences to require a finding that Challenger's case arises in a new context. *See, e.g.*, *Robinson v. Heinze*, No. 18-131, 2023 WL 1774998, at *4 (N.D. Ga. Feb. 3, 2023) (new context where U.S. Marshals were "acting in execution of a warrant," as compared to *Bivens*, "where federal narcotics officers executed a warrantless arrest"); *Logsdon v. U.S. Marshal Serv.*, No. 21-253, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (new context where (1) "officers arrested plaintiff outside a friend's house, unlike the unreasonable officer intrusion and arrest inside plaintiff's home in *Bivens*"; (2) "unlike the warrantless arrest in Bivens, the officers here had an arrest warrant for plaintiff"; and (3) "the officers here were employed by the [USMS], not the Bureau of Narcotics (or its successor agency, the Drug Enforcement Administration)"); *Goodale v. Seguin*, No. 22-31, 2022 WL 17084400, at *4 (W.D. Tex. Nov. 17, 2022) ("Ultimately, the Court finds that the presence of a warrant and the fact that the arrest took place outside of Plaintiff's home in this case together to be meaningful differences between the claim asserted by Plaintiff here and the claim asserted by the Plaintiff in *Bivens*. District courts across the country have reached the same conclusion."); *Lewis v. Westfield*, No.

16-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022); *Senatus v. Lopez*, No. 20-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022) (claims against deputized U.S. Marshals present new context), *report and recommendation adopted*, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022); *Cienciva v. Brozowski*, No. 20-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) ("Both [Plaintiff's case and *Bivens*] involved an arrest by federal agents, and both plaintiffs alleged unreasonable force during that arrest in contravention of the Fourth Amendment," however, plaintiff's "claim presents a new context because of at least one key factual difference: *Bivens* involved narcotics agents who arrested the plaintiff and searched the residence *sans* warrant; the defendants here acted pursuant to a valid arrest warrant. . . . [T]he presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*.") (internal citations omitted; citing cases); *Edwards v. Gizzi*, No. 20-7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (claims against [Deputy U.S. Marshals] presented new context because "the officers involved in *Bivens* were federal narcotics agents" and therefore part of "an investigatory and enforcement force," rather than members of the USMS); *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885, 893–94 (S.D. Iowa Oct. 27, 2021) (finding new context because plaintiff "was arrested outside of his home based on an arrest warrant"). For these reasons, I find that this case is meaningfully different from *Bivens*, and, thus, presents a new *Bivens* context.

### b.  Special Factors Analysis

Having found that Challenger's claims present a new *Bivens* context, I will now determine whether special factors counsel hesitation in extending *Bivens* to that context. *See Egbert*, 142 S. Ct. at 1803. There is not "an exhaustive list of factors that may provide a reason

not to extend *Bivens*"; it is clear, however, that separation-of-powers principles are "central" to the analysis. *Hernandez*, 140 S. Ct. at 743. The inquiry is "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Egbert*, 142 S. Ct. at 1798 (citation and quotation marks omitted). If "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it." *Id.* at 1803 (cleaned up; quoting *Ziglar*, 137 S. Ct. at 1858). "[E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id.* at 1803 (cleaned up).

Applying these principles, and mindful that recognition of a new extension of the *Bivens* cause of action is "disfavored judicial activity," *id.* at 1797, I am constrained to conclude that special factors counsel hesitation here. There is at least one reason to believe that Congress is better equipped than the courts to determine the contours of a damages remedy. *See Senatus*, No. 20-60818, 2022 WL 16964153, at *5–6 (opining that "a court will conceivably always be able to" clear "this low hurdle" of finding "'even one' reason to believe Congress would be better equipped to create a damages remedy than the judiciary").

In *Ziglar*, the Supreme Court explained that implying a damages remedy may present questions better fit for Congress to address for a number of sound reasons:

> It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others. It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make

> it less probable that Congress would want the Judiciary to entertain a damages
> suit in a given case.

137 S. Ct. at 1858. The case law has recognized that these reasons counsel in particular against the wisdom of creating a new *Bivens* claim against U.S. Marshals. *See also Robinson v. Heinze*, No. 18-131, 2023 WL 1774998, at *6 (N.D. Ga. Feb. 3, 2023) ("recognizing a cause of action against U.S. Marshals might have consequences far beyond the boundaries of this case"); *Logsdon*, 2023 WL 205052, at *4 ("courts are 'not undoubtedly better positioned than Congress to create a damages action' for claims against a new category of defendants such as [Deputy U.S. Marshals]") (quoting *Egbert*, 142 S. Ct. at 1803); *Senatus*, 2022 WL 16964153, at *5–6 (while "courts and jurists have often made judgment calls about the use of force in cases brought pursuant to 42 U.S.C. § 1983," "[w]ithout doubt, . . . numerous other implications . . . can be raised which could at least arguably counsel judicial restraint" in case involving excessive force claims against Deputy U.S. Marshals).

The availability of an alternative remedial structure may also counsel against extending *Bivens* liability. "The Supreme Court in [*Ziglar*] intimated, and in [*Egbert*] confirmed, that a court may not create a *Bivens* remedy 'if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.'" *Smith*, 2022 WL 17852393, at *4 (quoting *Egbert*, 142 S. Ct. at 1804). "Alternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Nyanteng v. Thompson*, No. 21-10390, 2022 WL 2763552, at *6 (D.N.J. July 15, 2022) (cleaned up; quoting *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018)). An alternative remedial structure, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804. "It does not matter if those existing remedial structures 'do not provide complete relief' or are 'not as effective as an individual damages remedy.'" *Cohen v.*

18

*United States*, No. 21-10774, 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022) (quoting

*Egbert*, 142 S. Ct. at 1804); *see also Ziglar*, 137 S. Ct. at 1863 ("when alternative methods of

relief are available, a *Bivens* remedy usually is not"). Indeed, they may provide at least negative

confirmation that Congress intended or at least acquiesced in such a limitation on the available

remedy.

Here, as the defendants argue, and as numerous courts have recognized,

alternative remedial schemes are available. As one court has explained,

> The Director of the Marshals Service is statutorily obligated to "supervise and
> direct the United States Marshals Service in the performance of its duties." 28
> U.S.C. § 561(g). And by regulation, the Director "shall" investigate "alleged
> improper conduct on the part of U.S. Marshals Service personnel." 28 C.F.R. §
> 0.111(n). Anyone aggrieved by a Deputy Marshal's conduct may file a grievance
> alleging improper conduct. *Ibid.* A complaint form for doing so is available on the
> website of the Marshals Service. . . . In addition, by statute, the Attorney General
> is required to ensure that "any component" of the Department that receives a
> "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by
> an employee of the Department of Justice . . . shall report that information to the
> Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress has also authorized the
> Department's Inspector General to "investigate allegations of criminal
> wrongdoing or administrative misconduct by an employee of the Department of
> Justice," "refer such allegations to the Office of Professional Responsibility," or
> refer them to "the internal affairs office of the appropriate component" of the
> Department, including the USMS. *Id.* § 8E(b)(2). The Department's Inspector
> General provides a link on its website through which any person may report
> allegations of wrongdoing. *See* Hotline, https://oig.justice.gov/hotline (last visited
> [June 29, 2023]).

*Lewis*, 2022 WL 16924177, at *4.[6] Remedial schemes of this sort "foreclose a *Bivens* action,"

because, as *Egbert* made clear, "[s]o long as Congress or the Executive has created a remedial

---

[6] *See also Logsdon*, 2023 WL 205052, at *4 (same); *Robinson*, 2023 WL 1774998, at *7 ("[T]he [USMS]
has oversight procedures as a measure against unconstitutional conduct. As in *Egbert* with the U.S.
Border Patrol, the [USMS] is statutorily obligated to investigate 'alleged improper conduct on the part of
U.S. Marshals Service personnel.' 28 C.F.R. § 0.111(n). Because the focus of this inquiry 'is whether the
Government has put in place safeguards to prevent constitutional violations from recurring,' not whether
'a given remedy is adequate,' the Court finds that this remedial process 'is sufficient' to secure deterrence
from unconstitutional behavior.") (quoting *Egbert*, 142 S. Ct. at 1806–07); *Goodale*, 2022 WL 17084400,
at *5 ("Congress has sufficiently acted in this area, creating alternative remedies to address allegations of
wrongdoing by United States Marshals, and thereby limiting the appropriateness of judicial action in

process that it finds sufficient to secure an adequate level of deterrence, the courts cannot

second-guess that calibration by superimposing a *Bivens* remedy." 142 S. Ct. at 1806–07.

Finally, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. ("FTCA"), which

provides "the exclusive remedy for most claims against Government employees arising out of

their official conduct," *Hui v. Castaneda*, 559 U. S. 799, 806 (2010), is another alternative

remedial structure that would counsel against implying a damages remedy here. *See Laoye v.*

*United States*, No. 14-5195, 2023 WL 2263670, at *8 (D.N.J. Feb. 28, 2023) ("It is also worth

noting that Plaintiff has other avenues to pursue his rights, indeed, he has filed this FTCA action

against the United States which remains pending in this Court. Thus, Plaintiff has alternative

remedy structures available and has in fact done so."); *Morales v. Cnty. of Camden*, No. 21-

11961, 2022 WL 671369, at *4 (D.N.J. Mar. 7, 2022) ("Plaintiff clearly could have brought her

[Fourth Amendment claims against Deputy U.S. Marshals] under the FTCA."); *Robinson*, 2023

WL 1774998, at *8 ("Whether the FTCA foreclosed *Bivens* claims was initially unclear.

However, [after *Ziglar*], more courts have found that—if nothing else—the application of the

FTCA is an additional reason against applying a *Bivens* claim in certain cases."); *Edwards*, 2022

WL 309393, at *9 (collecting cases holding that the FTCA qualifies as an alternative remedy

to *Bivens*).

---

finding an implied *Bivens* remedy here."); *Senatus*, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022)
("The *Egbert* Court has made clear that *Bivens* does not provide Senatus with a remedy for Defendants'
alleged egregious conduct. Instead, Congress has created a remedial structure in which the U.S. Marshals
are to conduct their own investigation into purported abuse by those acting on its behalf. Consequently,
this Court cannot extend *Bivens* to the instant case."), *report and recommendation adopted*, 2022 WL
16961323 (S.D. Fla. Nov. 16, 2022); *Cienciva*, 2022 WL 2791752, at *10–11 ("an alternative available
remedy exists for Cienciva within the legal mandates of the [USMS], in much the same way the Court
concluded one existed for Boule. . . . That our own independent consideration of the adequacy of such an
investigation or process may question its deterrent effects is of no moment; the *Egbert* decision
admonishes us not to graft a judicial remedy onto an existing grievance process that independently
forecloses a *Bivens* cause of action.") (cleaned up; quoting *Egbert*, 142 S. Ct. at 1806).

In short, a *Bivens* remedy is not suggested by prior Supreme Court case law, and at least one special factor counsels against extending *Bivens* to the present context. I therefore hold that *Bivens* does not provide an implied civil damages action for Challenger's claims against Uhler and Caldwell. Under *Ziglar* and *Egbert*, I am constrained to conclude that the remedy for such conduct, if any, must be created by Congress, not the courts. As to the *Bivens* claims, then, the summary judgment motion of Uhler and Caldwell is granted.

### D.  Deliberate Indifference Claim Against Bassolino

I also find that Challenger's deliberate indifference claim against Bassolino presents a new context, and that "special factors" counsel against creating a new *Bivens* remedy, largely for the same reasons discussed above.

Challenger's claim against USPO Bassolino—that she, a probation officer, was deliberately indifferent to his serious medical needs when she failed to obtain medical assistance upon his request—presents a new and different context. It arises under the Fifth Amendment, whereas the most closely analogous deliberate-indifference claim that the Supreme Court has recognized arose under the Eighth Amendment and was asserted against prison officials rather than probation officers. *Carlson*, 446 U.S. at 14.[7] The considerations governing the duties of an actual custodian are distinct from those governing a supervising probation officer. While the factual circumstances overlap, the entire factual and legal context differs sufficiently to require a finding that Challenger's claim presents a new context.  *See Egbert*, 142 S. Ct. at 1805 (noting that even "almost parallel circumstances . . . are not enough").

---

[7] *See, e.g.*, *McFadden v. Dalmasi*, 837 F. App'x 135, 137 (3d Cir. 2020) (explaining that deliberate indifference claims arise under Fifth Amendment for pretrial detainees, and Eighth Amendment for convicted prisoners, and that "the Fifth and Eighth Amendment standards are not necessarily coextensive"). *Davis v. Passman*, 442 U.S. 228 (1979), recognized a *Bivens* claim under the Fifth Amendment, but that case involved employment discrimination rather than medical treatment.

Apart from the novelty of the context, I find that special factors counsel hesitation in extending *Bivens* here. First, the "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," which "may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Ziglar*, 137 S. Ct. at 1858. Second, the FTCA is an available remedy for individuals who allege they have been injured by an employee of the federal judiciary.[8] *See McKinney v. United States*, No. 17-4156, 2021 WL 3856132, at *6–7 (D. Minn. Aug. 27, 2021) ("the FTCA provides a potential, alternative remedy for Plaintiffs [to pursue tort claims against a probation officer] and weighs against expansion of a *Bivens* remedy"); *Carvajal v. United States*, No. 20-567, 2021 WL 2814883, at *4 (N.D. Tex. May 11, 2021) (the FTCA "provides a potential, alternative remedy [for plaintiff to pursue tort claims against a probation officer] and militates against expansion of a *Bivens* remedy.").[9]

Accordingly, *Bivens* does not provide an implied civil damages action that would cover the deliberate-indifference claim against Bassolino. *See Abbasi*, 137 S. Ct. at 1865 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.").

---

[8] *See* https://www.uscourts.gov/rules-policies/judiciary-policies/federal-tort-claims-against-federal-judiciary-personnel (setting forth procedures for "presenting and resolving administrative monetary claims for personal injury, property damage, or death arising from the alleged negligence of officers and employees of the federal judiciary acting in the scope of their official duties") (last visited June 29, 2023).

[9] *See also Smith-Garcia v. Burke*, 815 F. App'x 187, 188 (9th Cir. 2020) (refusing to extend *Bivens* to a constitutional claim against a probation officer); *Elkins v. Elenz*, 516 F. App'x 825, 858 (11th Cir. 2013) (same); *Crowe v. Gee*, No. 121-503, 2022 WL 17360272, at *2 (D.N.M. Dec. 1, 2022) (declining to authorize an action under *Bivens* to redress a probation officers' alleged violation of the constitutional rights of a person on supervised release because "to do so would be contrary to the strong trend of limiting *Bivens*' reach" and noting that "[o]ther circuits that have considered whether to extend *Bivens* to allow claims against federal probation officers by plaintiffs on supervised release have likewise declined to do so") (cleaned up); *Wilson v. Buescher*, No. 21-3347, 2022 WL 7025098, at *5 (D. Colo. Oct. 12, 2022) ("Considering the harm of expanding a *Bivens* remedy to Probation Officers generally, and the availability of at least one alternative remedy, the Court finds no authority to recognize a *Bivens* remedy as to Plaintiff's remaining claims."), *report and recommendation adopted*, 2022 WL 16961941 (D. Colo. Nov. 16, 2022).

As with Challenger's excessive force claims, under *Ziglar* and *Egbert*, I conclude that the remedy for alleged deliberate indifference in the present context, if any, must be created by Congress, not the courts.

## III.   CONCLUSION

For the reasons above, I will grant defendants' motion for summary judgment (DE 196). An appropriate order follows.

DATED:  June 30, 2023

/s/ Kevin McNulty

_____

KEVIN MCNULTY
United States District Judge